**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

UNITED STATES OF AMERICA,

      Petitioner,

v.

BOULDER MANSION LLC, and
DAVID ZOOK,

      Respondents.

---

**PETITION FOR ORDER ENFORCING**
**TOXIC SUBSTANCES CONTROL ACT SUBPOENA**

---

The United States of America, through the United States Attorney's Office for the District of Colorado, acting on behalf of the Regional Administrator for the United States Environmental Protection Agency ("the EPA"), petitions the Court to issue an order directing Respondents Boulder Mansion LLC and David Zook ("Respondents") to produce written responses and documents pursuant to a Toxic Substances Control Act subpoena *duces tecum* ("Subpoena").

The purpose of the Subpoena is to determine compliance with the Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards Upon Sale or Lease of Residential Property rule, codified at 40 C.F.R. Part 745, subpart F ("Lead Disclosure Rule"), in connection with the lease or sale of any property in which Respondents have an ownership or management interest. Respondents own and manage at least one residential property with multiple rental units located at 806 E.   Boulder Street in Colorado Springs, Colorado.   Both Boulder Mansion LLC and Mr.

Zook have been named as respondents in this Petition.

The United States, on behalf of the EPA, respectfully requests that the Court issue an order that (1) directs Respondents to file a written response to this Petition to show cause why enforcement of the Subpoena should not be had, (2) permits a written reply by the EPA, and (3) sets a hearing (if the Court deems it necessary) on the Petition and issues an Order requiring Respondents to comply with the Subpoena.

## I. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to Section 11(c) of the Toxic Substances Control Act ("TSCA") of 1976, as amended, 15 U.S.C. App. § 2610(c), and 28 U.S.C. §§ 1331 and 1345.   In addition, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because David Zook resides in Colorado, Boulder Mansion LLC was formed and conducts business in Colorado, and the Subpoena at issue in this enforcement proceeding seeks information regarding Respondents' rental properties and activities in Colorado.

## II.   Background

As discussed above, the EPA is investigating compliance with the Lead Disclosure Rule in connection with the sale or lease of property owned or leased by Respondents.

On December 3, 2019, the EPA received a confidential complaint regarding a residential rental property located at 806 E. Boulder Street, Colorado Springs, Colorado ("the Property") The complainant, a former resident, stated that the Property was in "complete disrepair" and that paint was "constantly chipping off from the building onto the ground."   Ex. A (Declaration of Kristin Jendrek) at ¶ 5.   The complainant was concerned about the potential hazard created if the

paint was lead-based.   *Id.* at ¶ 5.   According to the complainant, David Zook is the "owner/landlord" of the Property.   *Id*. at ¶ 8.

In March 2009, according to the Articles of Organization, David Zook formed Boulder Mansion LLC and transferred ownership of the Property to "Boulder Mansion LLC" by a recorded warranty deed in El Paso County, Colorado.   *Id.* at ¶ 6.   According to El Paso County property records, Boulder Mansion LLC is the current owner of the Property.   Based on information available to the EPA, the Property consists of several rental apartment units and was built in 1891.   *Id.* at ¶ 7.   According to the complainant, the lease for one of the units at the Property stated, "Landlord informs tenant that there may be lead paint on the structure," but no other disclosures regarding lead-paint were made.   *Id*. at ¶ 9.

As part of its investigation, the EPA has sought to obtain information about the Property from Respondents for over a year, to no avail.   In December 2019, the EPA issued an Information Request Letter addressed to "David H. Zook, Owner, Boulder Mansion, LLC" in order to obtain information and documents to determine compliance with the Lead Disclosure Rule.   *Id.* at ¶ 10.   The EPA subsequently contacted Mr. Zook by telephone and email regarding the Information Request Letter in February, March, and April 2020, but has yet to receive the requested information.   *Id*. at ¶¶ 11-14–12.

On May 27, 2020, the EPA issued the Subpoena to "David Zook, Boulder Mansion, LLC" and "Jayhawk Café LLC, Registered Agent for: Boulder Mansion LLC." *Id.* at ¶ 15. Copies of the Subpoena were sent by certified mail and the EPA received signed return receipts verifying delivery.   *Id*. at ¶ 16.   According to the return receipts, the Subpoena sent to David Zook was received on May 29, 2020, and the Subpoena sent to Jayhawk Café LLC (as agent)

3

was received on June 3, 2020.  *Id.* The Subpoena required Respondents to respond within 30

days of receipt.  *Id*. at ¶ 15.   The Subpoena seeks information and documents regarding

Respondents' rental properties, the presence of lead-based paint or lead-based paint hazards, and

Respondents' compliance with the Lead Disclosure Rule.   A true and accurate copy of the

Subpoena is attached to Ex. A (Decl. of Kristin Jendrek) as Attachment 1.

.   On July 8, 2020, the EPA sent an email to Mr. Zook requesting a response to the

Subpoena and electronically transmitting a copy of the Subpoena.  *Id.* at ¶ 17.   In email and

telephone conversations since that time, Respondent Zook questioned the EPA's authority for

such requests, but failed to provide the information required by the Subpoena. *Id.* at ¶¶ 17–21.

Respondents have failed to provide any of the information required by the Subpoena.  *Id.*

at ¶ 21.

### III. Argument

The Court should issue an order directing Respondents to comply with the Subpoena. The

Subpoena meets the well-established controlling legal standards that apply to such subpoenas.

The Supreme Court has held that an administrative subpoena "is sufficient if the inquiry

is within the authority of the agency, the demand is not too indefinite and the information sought

is reasonably relevant."  *United States v. Morton Salt Co*., 338 U.S. 632, 652 (1950*); accord*

*McLane v. EEOC*, 137 S. Ct. 1159, 1165 (2017) (holding that if the information sought by an

administrative subpoena is relevant, "the district court should enforce the subpoena" unless the

subpoena "is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly

burdensome").   Under those standards: (a) the EPA's issuance of the Subpoena, which seeks

information on Respondents' compliance with the Lead Disclosure Rule, was "within the

authority of the agency"; (b) the demand for the answers and documents were specific and thus "not too indefinite"; and (c) the information sought is "reasonably relevant" to the EPA's investigation of compliance with the Lead Disclosure Rule at one or more of Respondents' properties. *Morton Salt*, 338 U.S. at 652; *see also U.S. v. Anderson*, 109 F. Supp. 3d 1049 (D. Ind. 2014) (enforcing a TSCA section 11 administrative subpoena requesting records under the Lead Disclosure Rule).

### A. EPA has authority to issue the subpoena *duces tecum*

The first element of the *Morton Salt* test is met because issuing the Subpoena was "within the authority of the agency." *Morton Salt,* 338 U.S. at 652.

The Toxic Substances Control Act (TSCA), 15 U.S.C. §§ 2601 *et seq.*, provides the EPA with "authority . . . to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment."   15 U.S.C. § 2601(b), (c).   Section 2615 gives the EPA the authority to carry out the civil and criminal enforcement provisions of the TSCA, found at 15 U.S.C. §§ 2614 and 2689.   Under Section 2689, it is illegal "for any person to fail or refuse to comply with a provision of [42 U.S.C. § 4852d] or with any rule or order issued under [it]." 42 U.S.C. § 4852d(b)(5).   The Lead Disclosure Rule was promulgated under 42 U.S.C. § 4852d. *See* 40 C.F.R. Part 745, subpart F.

The Lead Disclosure Rule, among other things, requires sellers and lessors to disclose to purchasers and lessees the potential health risks from exposure to lead-based paint, to disclose to purchasers and lessees any known information on lead-based paint and lead-based paint hazards, and to maintain certifications of such disclosures for no less than three years following the sale or commencement of the leasing period.   *See* 42 U.S.C. § 4852d; 40 C.F.R. Part 745, subpart F.

Section 11 of TSCA authorizes the EPA to issue administrative subpoenas to "require . . . the production or reports, papers, documents, answers to question, and other information the Administrator deems necessary" to carry out the provisions of TSCA, including the Lead Disclosure Rule.   15 U.S.C. § 2610.   In the event a subpoena recipient fails or refuses to comply, "any district court of the United States in which venue is proper shall have jurisdiction to order any such person to comply with such subpoena."   15 U.S.C. § 2610(c).

The EPA, armed with administrative subpoena authority, is thus authorized to undertake an investigation and gather information under its subpoena power to shed light on the threshold question of whether or not certain actors are violating the Lead Disclosure Rule.   *Cf. Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 198-99, 208-09 (1946) (where the statute permitted the Department of Labor to "investigate such … matters as he may deem appropriate to determine whether any person has violated any provision of the Act," it was "not necessary . . . that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one.   It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command.").

**B. EPA's demand is not too indefinite.**

The second element of the *Morton Salt* test is met because the Subpoena is specific and thus not "too indefinite."   *Morton Salt*, 338 U.S. at 652.

Here, the Subpoena requests a specific set of information required under the Lead Disclosure Rule and for the specific timeframe set forth in that rule.   The Lead Disclosure Rule requires lessors to make certain disclosures to lessees and to include required language in lease agreements.   *See* 40 C.F.R. §§ 745.107, 745.113.   The lessor is required to retain copies of the

lease contracts containing the required disclosures for no less than three years from the commencement of the lease period.   *Id.* § 745.113(c). The Subpoena here is narrowly tailored and seeks lease agreements, information on tenants, and information on the presence or absence of lead-based paint at the Property and any other residential rental properties owned, leased, or sold by Mr. Zook and Boulder Mansion LLC from the three years prior to the issuance of the Subpoena.   Because the request is clear and specific, it does not overly burden Respondents and they have not earlier argued that the Subpoena is too indefinite.

**C. The information sought by the Subpoena is reasonably relevant to the EPA's investigation.**

Finally, the third element of the *Morton Salt* test is met because, as explained above, the answers and documents sought by the Subpoena are "reasonably relevant" to the ongoing EPA investigation.   *Morton Salt*, 338 U.S. at 652.

The Supreme Court has recognized that the administrative subpoena authority of a federal agency is broad because the purpose of an administrative subpoena is not adjudicative, but rather is instead a power "to inquire."   *United States v. Clarke*, 573 U.S. 248, 254 (2014) (explaining that the purpose of an IRS summons "is 'not to accuse,' much less to adjudicate, but only 'to inquire'"); *United States v. Powell*, 379 U.S. 48, 57 (1964) (discussing other agencies' administrative subpoena powers as a "power of inquisition") (quoting *Morton Salt*, 338 U.S. at 642-43).

Given this regulatory function, the scope of information that may be sought by an administrative subpoena is much broader than the subpoena authority available during a judicial process.   The Supreme Court made this point in *Morton Salt*, where a corporation challenged the

authority of the Federal Trade Commission to issue administrative subpoenas.   The corporation argued that the FTC's subpoena was too broad because it was "engaged in a mere 'fishing expedition' to see if it can turn up evidence of guilt."   338 U.S. at 641.   In rejecting this argument, the Court criticized prior courts that had rejected administrative subpoenas by "engraft[ing] judicial limitations upon the administrative process."   *Id.* at 642; *see also id.* ("This case illustrates the difference between the judicial function and the function the [FTC] is attempting to perform.").   The *Morton Salt* Court explained that an agency exercising its administrative subpoena authority "has a power of inquisition . . . which is not derived from the judicial function. It is more analogous to the Grand Jury, which . . . can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 642-43.   The Court further explained that administrative subpoenas can properly be based on "official curiosity" about whether a party has complied with the law.   *See id.* at 652 ("Even if one were to regard the request for information in this case as caused by nothing other than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest."); *see also Phillips Petroleum v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991) (citing *Morton Salt* for the proposition that an agency "could compel the production of information even if action was a 'fishing expedition'").

Accordingly, where an agency has the authority to issue an administrative subpoena to investigate a matter, as the EPA has here, "relevance" must be given a broad meaning.   The Supreme Court recognized this principle in *United States v. Arthur Young & Co.,* 465 U.S. 805 (1984), noting that where a statute permitted the IRS to "'examine any books, papers, records or

other data which may be relevant or material' to a particular tax inquiry," the inquiry was "not to be Case judged by the relevance standards used in deciding whether to admit evidence in federal court," and that the IRS "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *Id.* at 813-14; *see also id.* at 815 ("Records that illuminate any aspect of the return … are therefore highly relevant to legitimate IRS inquiry.").   The Tenth Circuit has similarly held that the reasonable relevance test establishes only "minimal" requirements.   In *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007), the State of Utah, in an investigation of a doctor, issued administrative subpoenas for the billing records of forty-seven randomly selected patients over a three-year period.   The Tenth Circuit held that the subpoena met the "minimal requirements" for the reasonableness of the subpoena because the records sought were relevant to the state's investigation of potential fraud.   *Id.* at 916-17.

Here, like in *Becker*, the Subpoena issued by the EPA meets these "minimal requirements" for reasonable relevance because the answers and documents sought would shed light on Respondents' compliance with the Lead Disclosure Rule.   *Id.*; *see Anderson*, 109 F. Supp. 3d, at 1054–1053 (finding a TSCA subpoena with an almost identical scope was "not too indefinite and reasonably relevant to the [EPA's] investigation").   The Subpoena seeks the production of information and documents regarding lead-based paint and lead-based hazards at the Property based on allegations made by the complainant.   It is also reasonable, however, for the EPA to seek information and documents related to lead-based paint or lead-based hazards at other rental properties owned or leased by Respondents' to inquire about Respondents' compliance with the Lead Disclosure Rule.   These documents are expected to show whether Respondents notified tenants of the potential or known presence of lead-based paint and lead-

based paint hazards as required by the Lead Disclosure Rule.   Ex. A, at ¶ 23.   The information contained in these records will aid the EPA in its determination whether units were leased, which ones are subject to lead disclosure requirements, whether tenants were notified of the risks of exposure to lead-based paint, and whether tenants were notified of any known lead-based paint or lead-based paint hazards in the unit(s) they leased. *Id.* at ¶ 24.   This requested information will assist the EPA to assess the scope and extent of any violation of law.   *Id.* at ¶ 25.

In sum, the Subpoena is proper, as it meets all elements of the *Morton Salt* test.

## CONCLUSION

Because the Subpoena is proper under the applicable standards and the information is needed for the ongoing investigation, the United States of America, on behalf of the EPA, respectfully requests that the Court issue an order in these proceedings—giving Respondents an opportunity to be heard and to show cause by filing a written response to the Petition, and allowing a reply by the United States to any objections raised by Respondents—and then issue an order directing compliance with the Subpoena.

DATED this 19th day of April, 2021.

Respectfully,

MATTHEW T. KIRSCH
Acting United States Attorney

*s/ Lila M. Bateman*
Lila M. Bateman
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: lila.bateman@usdoj.gov
*Attorney for the United States of America*